2026 IL App (3d) 240717

Opinion filed July 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| GARY GRASSO, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0717 |
| | ) | Circuit No. 19-L-723 |
| | ) | |
| ZACHARY MOTTL; DAVID WILLIAMS; | ) | Honorable |
| ZAX PAC, an Illinois Political Action | ) | David E. Schwartz, |
| Committee; COR STRATEGIES, INC., an | ) | Judge, Presiding. |
| Illinois Corporation; and COLLIN CORBETT, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (COR Strategies, Inc. and Collin Corbett, | ) | |
| Defendants-Appellees). | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court, with opinion.
Justices Davenport and Anderson concurred in the judgment and opinion.
Justice Anderson also specially concurred, with opinion.

_____

**OPINION**

¶ 1       Plaintiff, Gary Grasso, mayor of Burr Ridge, appeals from the Du Page County circuit court's grant of summary judgment entered against him in his defamation lawsuit against defendants, COR Strategies, Inc. (COR), and Collin Corbett. Plaintiff's lawsuit alleged defendants

published three defamatory political mailers during a political campaign that stated he had defrauded the government in the amount of $36,000 in real estate tax exemptions.

¶ 2 The basis for the fraud claim originated from a research report of a third-party political research firm retained by defendants that indicated plaintiff had improperly received an annual $6,000 homestead exemption for a Du Page County residence while simultaneously receiving a homestead exemption for a Cook County residence. Accordingly, the $36,000 figure suggested plaintiff defrauded the government for a period of six years. However, the research report only supported a two-year overlap in homestead exemptions.

¶ 3 On appeal, plaintiff asserts the court erred in granting summary judgment for the defendants in that genuine questions of material fact exist regarding whether defendants were aware the mailers contained false information and whether defendants subjectively doubted the truth of that information. We hold that a triable issue exists as to whether defendants recklessly disregarded the truth in publishing the mailers, reverse the grant of summary judgment in their favor, and remand for further proceedings.

¶ 4 I. BACKGROUND

¶ 5 Plaintiff, a licensed attorney and the current mayor of Burr Ridge, Illinois, previously served as Burr Ridge's mayor from 2005 until 2012 before his reelection to that office in 2019. His defamation claims stem from the 2019 reelection campaign during which his opponent Zachary Mottl and his campaign team published allegedly defamatory statements.

¶ 6 Plaintiff filed his defamation lawsuit in July 2019. On June 19, 2020, he filed a nine-count second amended complaint against (1) Mottl; (2) David Williams, Mottl's fellow trustee who was alleged to have assisted Mottl in his mayoral campaign; (3) Zax PAC, a political action committee supporting Mottl's campaign; (4) COR, a corporation providing Mottl's campaign political

strategy, printing, and direct mail services; and (5) Collin Corbett, a political strategist and the president of COR.

¶ 7    Mottl, Williams, and Zax PAC were later dismissed from the lawsuit pursuant to a settlement, leaving COR and Corbett as defendants. The pleading alleged that defendants advised, consulted, and worked in concert with Zax PAC, Mottl, and Williams to conceptualize, develop, print, and mail campaign materials. Mottl received unfavorable poll results following the distribution of two campaign mail advertisements (mailers), and defendants allegedly advised Mottl that he needed to undertake a negative campaign against plaintiff.

¶ 8    Plaintiff attached the three mailers that were the product of defendants' advice to his second amended complaint. While the mailers included multiple accusations, plaintiff limits his focus on appeal to defendants' assertions in each of the three mailers that he committed tax fraud. Mailer No. 3 stated plaintiff "[d]efrauded the government by taking more than $36,000 in improper tax breaks," citing the Cook County Assessor's Office as its source. Mailer No. 4 entitled "Gary Grasso: Tax Fraud for Him, Higher Taxes for Us" stated plaintiff "[d]efrauded the government by crookedly taking more than $36,000 in improper tax breaks," citing "DuPage County Records" as its source. Mailer No. 4 depicts the image of a gun wielding, masked bandit catching a bag of money thrown to him by another individual. Mailer No. 5 stated plaintiff "defrauded taxpayers out of $36,000" and cited the Cook County Assessor's Office as its source. There is no dispute that the mailers were published to Burr Ridge voters via mail and social media.

¶ 9    Relevant to this appeal, counts I, II, and III of the complaint alleged that these statements constituted defamation *per se*, as they falsely imputed that plaintiff had committed a crime. Plaintiff further asserted that defendants had the "resources, means and knowledge to verify the

3

truth" before publication but "[o]n information and belief, neither [defendant] undertook any investigation to check the veracity" of the defamatory statements in the mailers.

¶ 10        Corbett's deposition testimony described COR's management of Mottl's 2019 mail campaign. The corporation "engaged a professional research company" doing business as America Rising "to do the majority or all of the research for the campaign." America Rising produced a 75-page opposition research report, which COR used to craft the campaign's message and create the mailers. To the best of Corbett's knowledge, COR verified the information it used from the research report with government websites. He testified that COR would not have used any information it believed to be false.

¶ 11        Corbett was questioned at his deposition regarding each mailer. He testified that while mailer No. 3's allegation relating to the $36,000 in fraud attributed the Cook County Assessor's Office as its source, the number "would have been based on the math from the DuPage County location." He was unable to explain the manner in which COR calculated the "more than $36,000" claim in mailer Nos. 3 and 4. Corbett authored the relevant portion of mailer No. 5 and stated the language in mailer No. 5 that plaintiff "defrauded taxpayers out of $36,000" came from "the government documents showing the double homeowners exemption that was taken." He recalled checking on the status of plaintiff's Cook County homestead exemption.

¶ 12        When asked whether the $36,000 figure in each mailer represented an exemption on plaintiff's Du Page residence for a duration of six years, Corbett responded "[t]he math on that checks out, yes." Corbett deferred to the research report when pressed on the source of the six-year exemption overlap and stated, "I can't speak to exactly how we did the math back in 2019 to figure that number out." When asked why the mailer did not reflect that plaintiff owed approximately $1,200 to Cook County based on exemption overlap as indicated in the research

4

report, rather than $36,000 in fraud, Corbett responded "I can't speak to our thinking at that time." He gave the same response when asked why COR did not publish $12,000 for the two years of overlap rather than $36,000 which corresponded to a six-year overlap.

¶ 13    The initial page of the January 2019 America Rising research report included findings that "Grasso may be fraudulently benefitting from property tax exemptions" and that plaintiff received a primary residence property tax exemption on two residences, his Chicago condominium that he purchased in 2015 and his Burr Ridge residence. The report indicated Grasso received a $6,000 annual homestead exemption on his Burr Ridge property since 2013 and that he received a homeowner exemption of $500.15 in 2016 and $726.60 in 2017 on his Chicago condominium. It included source citation hyperlinks which appear to be for governmental tax records for the County of Du Page and the Cook County Assessor's Office. It reiterated that plaintiff had received overlapping homestead exemptions in 2016 and 2017 later in the report.

¶ 14    On February 2, 2024, defendants filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2024)), asserting plaintiff failed to establish defendants had the actual malice required to sustain his defamation lawsuit as a public figure. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). The motion posited that the record was devoid of evidence that would tend to show that defendants subjectively knew the falsity of the mailers or subjectively doubted their truth. Instead, the record confirmed that plaintiff had benefited from "multiple, simultaneous homeowner's exemptions" and thus supported the factual basis of the mailers. In response, plaintiff cited Corbett's deposition and defendants' admitted lack of investigative effort to maintain that there was sufficient evidence to establish a question of material fact on whether the mailers were published with malicious intent or a reckless disregard for the truth.

5

¶ 15     The court granted summary judgment in favor of the defendants on July 2, 2024. In considering the motion in the light most favorable to plaintiff as the nonmovant, it assumed "that the mailers *** were in fact untrue" and the veracity of any tax exemption impropriety alleged by defendants was a question for the jury. Nonetheless, focusing on the actual malice standard, the court held that "even in a light most favorable to plaintiff, there is simply no clear and convincing evidence that the defendant entertained serious doubts and published anyway."

¶ 16     The circuit court denied plaintiff's amended motion to reconsider on December 5, 2024, noting that the points supporting the motion were arguments previously presented and argued.

¶ 17     Plaintiff timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19     The circuit court granted defendants' motion for summary judgment, concluding that plaintiff failed to meet his burden of showing a triable issue that defendants had acted with actual malice in publishing the alleged defamatory mailers. Plaintiff asserts the record supports genuine issues of material fact regarding whether defendants subjectively entertained serious doubts as to the truth of the mailers and that the circuit court supplanted the fact-finding function of the jury in awarding summary judgment. Defendants respond that the record contains no evidence of actual malice and that plaintiff's failure to satisfy his burden of proving such by clear and convincing evidence warranted summary judgment.

¶ 20     "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2024). In ruling on a motion for

6

summary judgment, "a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996). "If the undisputed facts could lead reasonable observers to divergent inferences, or if there is a dispute as to a material fact, summary judgment should be denied." *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 25. While an expeditious aid in disposing of a lawsuit, summary judgment is a drastic measure and should only be allowed when the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). The standard of review for a summary judgment ruling is *de novo*. *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15.

¶ 21        Summary judgment motions come in two types: the traditional, which identifies an issue and presents facts, which, unless they are controverted, require judgment entered against the nonmovant, and the *Celotex* variety (see *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)), which identifies an issue that the nonmovant must prove and demonstrates there is insufficient evidence to sustain the nonmovant's burden. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 25. The motion before us is of the *Celotex* variety. The circuit court partially granted plaintiff's motion to conduct discovery under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) in response to a prior motion for summary judgment, and plaintiff does not argue discovery was impermissibly limited in this appeal.

¶ 22        To prevail on an action for defamation *per se*, a plaintiff must prove that the defendant made a false statement concerning plaintiff, the defendant published the statement to a third party without privilege, and that plaintiff was damaged as a result. *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 451 (2000). A statement is defamatory *per se* when the harm is "obvious and apparent on its face." *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill.

7

2d 558, 579 (2006). The mailers' accusations that plaintiff committed tax fraud impute the commission of a criminal offense and fall within the ambit of defamation *per se*. See *id.*; *Wynne*, 318 Ill. App. 3d at 451; *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 580 (2003).

¶ 23　　　　The law distinguishes between " 'public' and 'private' persons" seeking to recover in a defamation action. *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 58. It places a heightened standard of proof with respect to establishing defendant's intent on public officials and figures. See *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 26. It is not in dispute that plaintiff is a public official. A public official must prove that the alleged defamatory statements were made with actual malice. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 394 (2008). The actual malice standard set forth in the landmark decision *New York Times*, 376 U.S. at 280, requires a statement to have been made "with knowledge that it was false or with reckless disregard of whether it was false or not." Under this standard, plaintiff must prove that defendants published defamatory statements with actual malice through clear and convincing evidence. *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 419 (1988); *Jacobson*, 2014 IL App (1st) 132480, ¶ 26.

¶ 24　　　　The intention underlying the adoption of the actual malice standard is to uphold constitutional protections, such as freedom of expression secured by the first amendment (U.S. Const., amend. I), related to the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times*, 376 U.S. at 269-70. On the other hand, while false statements of fact inevitably occur in free debate, they neither materially advance the societal value in public discussion nor are worthy of constitutional protection. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). A balance is

8

sought to afford "breathing space" between permitting public officials to recover from actionable defamation without deterring constitutionally valuable speech relating to public figures, which would undoubtedly occur should the law impose strict liability on those who publish false factual assertions in this context. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988); see *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (actual malice standard and proof of reckless disregard protects against self-censorship). As such, a public official must prove "*both* that the statement was false and that the statement was made with the requisite level of culpability" in order to recover for defamation. (Emphasis in original.) *Hustler Magazine, Inc.*, 485 U.S. at 52.

¶ 25        In cases like the one before us in which a defamation claim is unsupported by overt evidence that falsehoods were knowingly published, plaintiff must satisfy the actual malice standard by showing defendants published the mailers with reckless disregard for their accuracy. See *Wanless v. Rothballer*, 115 Ill. 2d 158, 170 (1986). "The inquiry is necessarily subjective," and the focus is on a defendant's state of mind at publication. *Id.*; *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 804 (1992); *Hardiman v. Aslam*, 2019 IL App (1st) 173196, ¶ 6 ("The inquiry into whether a statement was made with actual malice is subjective."). A reckless disregard for the truth is established only where the "evidence shows that the defendant in fact entertained serious doubts as to the truth of the publication" (*Costello*, 125 Ill. 2d at 419) or the defendant published defamatory matter "despite a high degree of awareness of its probable falsity." *Tirio*, 2019 IL App (2d) 181019, ¶ 58.

¶ 26        The issue of actual malice depends upon a defendant's state of mind and "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979). This does not absolve the burden a plaintiff bears of presenting evidence that would support his or her position at trial in opposing summary judgment. See *Piersall v. SportsVision of Chicago*, 230 Ill.

9

App. 3d 503, 507-08 (1992). While the movant possesses the burden of showing the absence of genuine issues of material fact, a plaintiff must present affirmative evidence to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The court's decision on the motion is then guided by the substantive evidentiary standards applicable to the case. *Id.* at 255. As such, a court ruling on a motion for summary judgment seeking to defeat a defamation claim should determine whether the evidence presented "is such that a reasonable jury might find that actual malice had been shown with convincing clarity" in order to satisfy plaintiff's clear and convincing evidence burden. *Id.* at 254, 257; see *id.* at 256 n.7 (explaining *Hutchinson*'s denouncement of summary disposition with actual malice "was simply an acknowledgment" of the reluctance to afford defamation defendants additional procedural protections); see also *Catalano v. Pechous*, 83 Ill. 2d 146, 170 (1980) (proof that the defendant doubted the truth of defamatory statement before publishing must be made with convincing clarity).

¶ 27　　　A defendant's state of mind required to establish actual malice may be proven through circumstantial evidence. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); see *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (" 'The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to ***.' " (quoting 50 Am. Jur. 2d *Libel and Slander* § 455 (1970))); see also Restatement (Second) of Torts § 580A cmt. d (1977) (the presence of ill will or animus in making a communication may assist in drawing an inference of a publisher's actual malice). Examples of circumstantial evidence giving rise to a defendant's subjective recklessness include "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call," where "allegations are so inherently improbable"

they would only be circulated by one acting recklessly, or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732.

¶ 28 The narrow question presented in this appeal is whether the evidence of record supports that plaintiff has shown with convincing clarity that a reasonable jury might find defendants published the mailers with actual malice. *Anderson*, 477 U.S. at 257. In the light most favorable to plaintiff, we hold that such a triable issue exists. Corbett testified at deposition that defendants relied on the America Rising research report for the information they featured within the mailers. He and/or COR vetted that information by examining governmental records that corroborated the research report's findings concerning simultaneous homestead exemptions. In turn, defendants crafted and published the mailers. Corbett testified to his direct involvement in drafting mailer No. 5, which included similar allegations from the preceding two mailers that plaintiff had committed fraud in the amount of $36,000.

¶ 29 The research report indicates that plaintiff had an overlapping homeowner's exemption on his properties for a two-year period. A colorable argument may be made from the report that plaintiff received a total of $12,000 in improper homestead exemptions on his Burr Ridge residence. Corbett was unable to recall how defendants converted that information into a claim of fraud in the sum of $36,000. The research report in no way supports the notion that plaintiff received an improper exemption beyond the years 2016 and 2017. Corbett was unable to explain the "math" defendants used to formulate the $36,000 figure, let alone the alleged "more than $36,000" accusation in mailers Nos. 3 and 4. This is not a matter in which a defendant placed blind faith in a known source without further investigation. *Wanless*, 115 Ill. 2d at 172 ("[R]eckless disregard cannot be inferred merely because defendants did not double check the facts supplied by known sources, unless there is reason to doubt their trustworthiness."). Indeed, defendants agree

11

that they undertook their own investigation which they were under no obligation to do. When viewed in light most favorable to plaintiff, Corbett's testimony indicates that following their independent vetting of the report, defendants published information on their own accord that the report did not reflect. An inference of reckless disregard may be made where the "defendant's investigation has revealed *** insufficient information to support the defamatory accusations in good faith." *Costello*, 125 Ill. 2d at 421.

¶ 30    Taken further, based on Corbett's testimony, defendants appear to be the "original source of the defamatory statement" that plaintiff committed fraud in an amount and inferentially over a time period that when read in the light most favorable to plaintiff was untrue. See *Catalano*, 83 Ill. 2d at 150, 166 (holding county clerk's statement accusing aldermen at a council meeting of bribery as the original source of the defamatory statement had at the least made the statement with reckless disregard of whether it was true). Considering the foregoing, a reasonable jury might find that Corbett's testimony provides convincing clarity that defendants published the mailers with reckless disregard for the truth. See *Anderson*, 477 U.S. at 257.

¶ 31    Defendants direct our attention to the portions of Corbett's deposition they assert are dispositive of Corbett's subjective state of mind. Corbett routinely responded "I can't speak to our thinking at that time" when questioned why defendants published the duration and amount of simultaneous homestead exemptions beyond those reflected in the research report. Defendants assert defendants' subjective intent is best evidenced by Corbett's unrefuted testimony that they would not have used any information they believed to have been false. This testimony does not negate a showing of actual malice. *Reed v. Northwestern Publishing Co.*, 129 Ill. App. 3d 133, 143 (1984). As the United States Supreme Court has explained, "[t]he defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying

12

that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant*, 390 U.S. at 732. While a determination on actual malice is not always a question reserved for the jury and may be disposed of on summary judgment (*Pease v. International Union of Operating Engineers Local 150*, 208 Ill. App. 3d 863, 872 (1991)), there is no indication the circuit court considered whether the mailers were published in good faith in its grant of summary judgment. As we have noted, we conclude a genuine issue of material fact exists concerning the claim of actual malice.

¶ 32    Defendants reiterate that the appropriate inquiry is not to determine whether the mailers factually misrepresented the scope of the tax exemption. Instead, the question before us is whether there is sufficient evidence shown that defendants subjectively knew that the information in the mailers was false or that they recklessly disregarded the truth. We can reach no other conclusion than a genuine issue of material fact is presented concerning whether defendants recklessly disregarded the truth in accusing plaintiff of $36,000 in tax fraud, when neither the government documents nor the America Rising research report upon which defendants allegedly relied support that figure. As such, summary judgment was inappropriate where the record establishes a triable issue on the question of actual malice.

¶ 33                                 III. CONCLUSION

¶ 34    The judgment of the circuit court of Du Page County is reversed and remanded.

¶ 35    Reversed and remanded.

¶ 36    JUSTICE ANDERSON, specially concurring:

¶ 37    I concur with the majority's analysis and conclusion. I write separately, however, to elaborate on the problem that exists when a party seeks summary judgment based on their own

13

subjective knowledge and intent, and that party is the only one who has that information (and I use "information" loosely).

¶ 38    The general, and almost universal, rule is that summary judgment is the moment where a party must put up or shut up. *Wells Fargo Bank, N.A. v. Coghlan*, 2021 IL App (3d) 190701, ¶ 23. When a summary judgment movant presents evidence of an objective fact that is unrebutted, that fact is typically taken as true. *In re Estate of Allen*, 365 Ill. App. 3d 378, 387 (2006) (stating that, generally, an averment made in an affidavit or deposition in support of a motion for summary judgment that is not controverted will be taken as true). This is the rule that defendants advance. Indeed, in contending that summary judgment was proper, defendants argue in their brief, in pertinent part, as follows:

> "Plaintiffs must show actual malice by clear and convincing evidence. Actual malice can be shown by subjective knowledge of a statement's falsity when made. In this case, all the evidence is that Defendants did not believe the statements were false when made. Moreover, at no time did Defendants entertain any doubts as to the truth of the statements when published, and as a result there is no actual malice.
>
> While Plaintiff lacks evidence of actual malice to support his case, it is also clear that there is abundant evidence that Defendants believed the exact opposite. The most direct evidence comes from this colloquy at Collin Corbett's deposition:
>
> 'Q: If [defendants] had believed any information that it used to be false, would it have been used?
>
> A: No.'
>
> This evidence is unrefuted.

14

Mr. Corbett's deposition went further, clearly indicating that Defendants did not believe they were accusing Plaintiff of a crime, and they did not intend to accuse Plaintiff of a crime. There is simply no evidence of Defendants' state of mind to a clear and convincing level that Defendants subjectively believed that the statements were false, but instead there is ample evidence to the contrary. There is no evidence of Defendants' state of mind that can be twisted to contradict the deposition statements."

¶ 39     To be sure, defendants make an argument most any lawyer would, and perhaps should, make. But there is a competing summary judgment principle at play here. The difficulty arises because the "undisputed" evidence defendants rely upon is not an objective fact; it is a party's own assertion regarding a fact that exists only within that party's mind.

¶ 40     A party's credibility, beliefs, and subjective intent when acting is typically a question of fact. See *People v. Cardamone*, 232 Ill. 2d 504, 517 (2009) (defendant's argument regarding his intent presented a question of fact); *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 364 (2007) (whether act was willful and malicious was question of fact in a bankruptcy discharge case); *Palmateer v. International Harvester Co.*, 140 Ill. App. 3d 857, 860 (1986) (listing a broad range of cases holding that intent is a question of fact, including holdings on retaliatory discharge, fraud, easements, and trust construction). As summary judgment must be reserved for cases in which there is no question of material fact (735 ILCS 5/2–1005(c) (West 2024)), it generally should not be used when a party's intent and subjective beliefs are central issues in the case (*Schroeder*, 375 Ill. App. 3d at 368).

¶ 41     Indeed, we have repeatedly held that " 'summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent[,] and subjective feelings and reactions.' " *Farmers Automobile Insurance Ass'n v. Williams*, 321 Ill.

15

App. 3d 310, 314 (2001) (quoting *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 859 (1989)). In other words, issues of motive, intent, feelings, and reactions are not normally subject to summary judgment. *Borchers v. Franciscan Tertiary Province of the Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 30; *Palmateer*, 140 Ill. App. 3d at 860; *Darnell v. Impact Industries, Inc.*, 119 Ill. App. 3d 763 (1983) (discussing issues of motive and intent when reviewing a motion for directed verdict), *aff'd*, 105 Ill. 2d 158 (1984); *Luthy v. Keehner*, 90 Ill. App. 3d 127, 131 (1980) (question on intent to create an easement precluded summary judgment). Although summary judgment may still be granted if the record is sufficiently clear (see *Cincinnati Insurance Co. v. Argubright*, 151 Ill. App. 3d 324, 330-31 (1986)), it must be denied if the facts "are susceptible to different inferences by fair-minded persons" (*Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 314 (1994)). Here, reasonable persons could draw wholly divergent inferences from the facts of this case.

¶ 42    The issue here is not whether Corbett blew a stop sign, signed a contract, or mailed a letter on a particular date. Those are objective facts susceptible to contradiction through competing evidence. Rather, the dispositive fact asserted here concerns not an objective fact, but Corbett's credibility relative to his own state of mind—his subjective knowledge at the moment he published the allegedly defamatory statement. By its nature, such information resides exclusively within Corbett's head. Grasso cannot reasonably be expected to submit a counter-affidavit declaring what Corbett actually knew because Grasso has no personal knowledge of that fact. See Edward J. Brunet, *et al.*, *Judicial Hostility Toward "Sham Affidavits" and the Affidavits of "Interested Parties."* Summary Judgment: Fed. L. & Prac. § 8:8 (Dec. 2025 Update) (discussing judicial hostility toward "sham affidavits" and the affidavits of "interested parties").

16

¶ 43    To hold otherwise would create a peculiar and troubling rule. A defamation defendant could win merely by submitting an affidavit stating, "I did not know the statement was false," and absent circumstances permitting competing inferences regarding the defendant's state of mind, the plaintiff would be powerless to contest it. The more private the defendant's knowledge, the more insulated it would become from judicial scrutiny. Such a rule would transform summary judgment from a mechanism for identifying the absence of genuine factual disputes into a device for conclusively establishing them.

¶ 44    Credibility lies at the heart of this case. Defendants ask us to accept Corbett's statement not because it is corroborated by independent evidence but because he says it is true. Of course, uncontradicted testimony may be sufficient to establish a fact in many circumstances. But the trier of fact is not required to accept as true testimony that bears directly on a witness's own credibility, motive, or subjective state of mind simply because no opposing witness can directly contradict it. Further, courts have long recognized that the trier of fact is not required to believe self-serving testimony simply because it is uncontradicted. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 123 ("even assuming *arguendo* that [defendant's] testimony was uncontradicted, we cannot, on this record, reverse the court's apparent finding that [defendant] was not credible"); *In re Marriage of Pittman*, 212 Ill. App. 3d 99, 103 (1991) (even uncontradicted testimony, if inherently unreasonable or improbable, need not be believed); *Davies v. Arthur Murray, Inc.*, 124 Ill. App. 2d 141, 155 (1970) (the trier of fact is not required to believe the testimony of an interested witness merely because it is uncontradicted). Human experience teaches otherwise. Witnesses may be mistaken, evasive, self-interested, or dishonest. The assessment of credibility has traditionally belonged to the factfinder, who can observe demeanor, evaluate inconsistencies, and consider testimony in the context of all surrounding circumstances.

17

¶ 45	Corbett's deposition testimony provided defendants with only slightly more entitlement to summary judgment than they had when they answered the complaint and denied Grasso's allegations. The credibility of his self-serving testimony should be left for the trier of fact. See *Pientka v. Board of Fire Commissioners of the North Main Fire Protection District*, 125 Ill. App. 3d 124, 132 (1984); *Pryka v. Board of Fire & Police Commissioners of the Village of Schaumburg*, 67 Ill. App. 3d 210, 214 (1978); *Davies*, 124 Ill. App. 2d at 155 (the trier of fact is not required to believe the testimony of an interested witness merely because it is uncontradicted). Indeed, in *Practical Offset, Inc. v. Davis*, 83 Ill. App. 3d 566, 573-74 (1980), the court rejected a similar argument, stating "[w]e believe defendant's bald assertion in his deposition *** is insufficient," "self-serving, and little better than a denial in defendant's answer; it is totally without a factual basis."

¶ 46	These principles carry particular force where, as here, the witness stands to benefit directly from acceptance of his testimony. Corbett's deposition testimony is not a neutral recitation of historical facts. It is a self-serving declaration concerning the very mental state that determines liability. Corbett effectively asks the court to conclude that he lacked knowledge of falsity because he *says* he lacked knowledge of falsity. Such circular reasoning leaves no meaningful role for cross-examination or credibility assessment.

¶ 47	This case has loose parallels to *Kainrath v. Grider*, 2018 IL App (1st) 172270, which involved allegedly defamatory statements made in the context of a political contest. In a deposition, Grider defended himself against the complaint's false light claims by denying that he acted with malice. In rejecting Grider's reliance on his self-serving denials, the court stated that Grider's "own testimony insisting he did not act with actual malice" was insufficient "to demonstrate the lack of a question of material fact." *Id*. ¶ 53. The court further stated:

18

" 'When determining whether factual issues exist for purposes of a summary judgment motion, we must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence.' (Internal quotation marks omitted.) *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1029-31 (2001) (finding—the defendant's own assertions to the contrary—that the plaintiff raised a triable issue of fact regarding whether the defendant acted recklessly or with 'actual malice'); see also *Perfection Corp. v. Lochinvar Corp.*, 349 Ill. App. 3d 738, 744 (2004) ('[u]nsupported assertions, opinions, and self-serving or conclusory statements made in deposition testimony are not admissible evidence upon review of a summary judgment motion')." *Id.* ¶ 52.

¶ 48     In all fairness to Corbett, most testimony is self-serving, and I do not suggest that self-serving testimony can never support summary judgment. It often does. Not *every* disputed question of fact must reach trial. But cross-examination exists precisely for situations such as this one. It allows an opposing party to probe the witness's sources of information, prior statements, motives, inconsistencies, and claimed beliefs. A witness who confidently professes ignorance in a quiet deposition may appear far less convincing when required to answer detailed questions under oath before a judge or jury. The law's traditional preference for live testimony reflects the recognition that truth is often revealed not merely by what a witness says but by how the witness responds when challenged.

¶ 49     In the American legal system, courts routinely rely on the trier of fact to make a credibility determination. Perhaps Corbett's testimony was truthful, and maybe it was not. Corbett can tell a judge or jury that he did not know the claims were false. Grasso's counsel can cross-examine Corbett and test his assertions in various ways. And the trier of fact can determine whether

19

Corbett's claims are sincere based on his testimony, the surrounding circumstances, and any reasonable inferences arising from the evidence—even if no witness can directly testify regarding what Corbett actually knew. But we cannot allow a litigant to stroll into a deposition, pull a Jon Lovitz and announce, "Yeah, I had no idea it was false. Yeah, that's right. Yeah," then demand summary judgment because no one possesses contrary evidence from inside his head. That may be the ticket for comedy. It is not the ticket for summary judgment.

*Grasso v. Mottl*, 2026 IL App (3d) 240717

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-L-723; the Hon. David E. Schwartz, Judge, presiding. |
| **Attorneys for Appellant:** | Jerome A. Vinkler, of Vinkler Law Offices, Ltd., of Burr Ridge, and Adam R. Bowers, of Grasso Law, P.C., of Hinsdale, for appellant. |
| **Attorneys for Appellee:** | Keith S. Brin, of Highland Park, for appellees. |